UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:18-cv-2549-T-24TGW

WORLDWIDE AIRCRAFT SERVICES, INC., d/b/a
JET I.C.U.

    Plaintiff,

vs.

UNITED HEALTHCARE INSURANCE
COMPANY

    Defendant.

_____/

### DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant, UNITED HEALTHCARE INSURANCE COMPANY ("United"), moves to dismiss all of Plaintiff's claims pursuant to Rule 12(b)(6) and in support thereof states as follows:

### Introduction and Preliminary Statement

Plaintiff Worldwide Aircraft Services, Inc., d/b/a Jet I.C.U. rendered air medical transportation services to an "insured beneficiary under a health care policy provided by Defendant." Complaint at ¶9. According to Plaintiff, it submitted a bill to United "for services rendered to [the insured] and otherwise demanded payment for the medical air transport services." Complaint at ¶16. United allegedly made what Plaintiff describes as "partial payment" for the services in question but Plaintiff contends it was "grossly underpaid" in violation of Florida law. Complaint at ¶13. Plaintiff asserts common law as

well as statutory claims against United "to recover for underpayment" of air medical transportation services from St. George, Grenada to Tampa, Florida. Complaint at ¶8 and ¶15. The state-law claims for unjust enrichment, quantum meruit, and violations of insurance and health maintenance organization statutes, however, are federally preempted by the Airline Deregulation Act.

Congress enacted the Airline Deregulation Act in 1978 to promote "efficiency, innovation, and low prices" in the air transportation industry through "maximum reliance on competitive market forces and on actual and potential competition." 49 U.S.C. §§ 40101(a)(6), 12(A); *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 134 S.Ct. 1422, 1428, 188 L.Ed.2d 538 (2014). "To ensure that the States would not undo federal deregulation with regulation of their own," Congress included a preemption provision as part of the Airline Deregulation Act. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). Under the preemption provision, a State "may not enact or enforce a law, regulation, or other provision ***having the force and effect of law related to a price***, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1) (emphasis supplied).

As a threshold matter, because all four of Plaintiff's state-law claims have the effect of regulating charges for air carrier services, the claims should be dismissed as preempted by the broad preemptive provisions of the Airline Deregulation Act. *Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1272 (11th Cir. 2018) (state regulation of air ambulance prices is preempted by the Airline Deregulation Act); and *Reva, Inc. v. Humana Health Benefit Plan of Louisiana, Inc.*, No. 18-20136-CIV, 2018 WL 1701969, at *1 (S.D. Fla. Mar.

19, 2018) (Airline Deregulation Act preempted air ambulance company's claims for reimbursement of emergent air transport services based on provider's standard charges under state-law theories of unjust enrichment and quantum meruit).

Even if the state-law claims were not preempted, however, they suffer from other fundamental pleading defects. *First*, the health care policy that Plaintiff references throughout its pleading was not delivered in Florida. Nor does the policy provide "health maintenance organization" ("HMO") coverage. Rather, the policy was delivered in the State of Louisiana and it provides insurance protection. As a result, neither section 627.64194 nor section 641.513 applies to the policy in question. *See* Fla. Stat. § 627.64194(1)(c) (defining "insured" to mean someone who is covered by a health insurance policy "delivered or issued for delivery in this state."); *See also* Fla. Stat. § 641.19(11) and § 641.19(12) (defining a "health maintenance contract" as a "contract entered into by a health maintenance organization . . . to provide coverage for comprehensive health care services in exchange for a prepaid per capita or prepaid aggregate fixed sum" and defining a "health maintenance organization" as "any organization authorized under this part" to provide health care services to subscribers).

*Second*, neither section 627.64194 nor section 641.513 applies to air ambulance services. Plaintiff's air medical transportation services do not qualify as "emergency services and care" within the meaning of the statutes. *See* 627.64194(1)(a) (defining "emergency care and services" by reference to 641.47(8) and requiring that such services be provided "in a facility."); *See also* § 641.47(8) (defining "emergency care and services" to mean "the care,

treatment, or surgery for a covered service by a physician necessary to relieve or eliminate the emergency medical condition within the service capability of a hospital.").

*Third*, the Complaint fails to allege facts sufficient to sustain relief under the doctrines of unjust enrichment or quantum meruit. As Plaintiff acknowledges, it has not entered into any direct or express agreement with United for the provision of services to United policyholders. Plaintiff rendered services at the behest of its own customer, H.P., "because the facility in which [H.P.] was initially treated lacked the capability to adequately treat her." Complaint at ¶12. The sole interaction that Plaintiff alleges with United occurred *after-the-fact* when Plaintiff "billed Defendant for services rendered to [H.P.]" and received a benefit payment under the health care policy that Plaintiff considers inadequate. These circumstances do not entitle Plaintiff to relief under the equitable doctrines of unjust enrichment or quantum meruit. *Extraordinary Title Servs. v. Fla. Power & Light Co.*, 1 So.3d 400, 404 (Fla. 3rd DCA 2009) (affirming dismissal of an unjust enrichment claim because the plaintiff "ha[d] not conferred a direct benefit" on the defendant).

## Legal Argument

A. <u>The Airline Deregulation Act Expressly Preempts Plaintiff's State-Law Claims</u>

State law may be preempted by federal law in three ways: (1) where Congress defines explicitly the extent to which its enactments preempt state law (*i.e.*, express preemption); (2) where state law regulates conduct in a field that Congress intended the federal government to occupy exclusively (*i.e.*, implied preemption); and (3) where state law actually conflicts with federal law. *Arizona v. United States*, 567 U.S. ——, 132 S.Ct. 2492, 2500–01, 183 L.Ed.2d 351 (2012); *Cliff v. Payco General American Credits, Inc.*, 363 F.3d 1113, 1122 (11th

4

Cir.2004). This case involves *express* preemption by the Airline Deregulation Act because the statute contains a preemption provision "which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S. Ct. 1732, 1737, 123 L. Ed. 2d 387 (1993).

The Airline Deregulation Act's preemption clause provides in pertinent part: "[A] State ... may not enact or enforce a law, regulation, standard, or other provision having the force and effect of law relating to price, route, or service of an air carrier ..." 49 U.S.C. § 41713(b)(1) (1997). As such, the preemption of Plaintiff's state-law claims depends upon whether Plaintiff is an "air carrier" and, if so, whether the state-law claims "relate to" Plaintiff's "price, route or service."

The Eleventh Circuit has found that a provider of air ambulance services is an "air carrier" for purposes of the Airline Deregulation Act's preemption provision. *Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259 (11th Cir. 2018). The Eleventh Circuit joins the ranks of courts that recognize air ambulance providers qualify as "air carriers" within the meaning of the Airline Deregulation Act. *See e.g. EagleMed, LLC v. Cox*, 868 F.3d 893, 904 (10th Cir. 2017) (observing that "air ambulances are included within the broad language of the Airline Deregulation Act's preemption statute as it is currently written."); *Schneberger v. Air Evac EMS, Inc*., 2017 WL 1026012, at *2 (W.D. Okla. Mar. 15, 2017) (noting that "[c]ourts have all but uniformly held that air ambulance providers are 'air carriers' under the ADA.")

The next requirement for Airline Deregulation Act preemption is that the challenged state law claims "relat[e] to ... the price ... of an air carrier." 49 U.S.C. § 41713(b). The

Supreme Court has identified "relating to" as the key phrase in the preemption provision, holding that "[t]he ordinary meaning of these words is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer, to bring into association with or connection with'—and the words thus express a broad pre-emptive purpose." *Morales*, 504 U.S. 374, 383 (1992). Comparing similar language in the Employee Retirement Income Security Act of 1974, *Morales* held that a state law "relates to" an air carrier's prices if it has "a connection with or reference to" such prices. *Id*. at 384.

Relying on the Supreme Court's broad interpretation of 49 U.S.C. § 41713(b), the Eleventh Circuit announced that preemption is triggered "[w]henever a state law has 'the forbidden significant effect' on the prices of an air carrier." *Bailey*, 889 F.3d at 1262 (11th Cir. 2018) (internal citation omitted). The Eleventh Circuit applied this broad preemption standard in a case where a consumer sued to contest the reasonableness of an air ambulance provider's full billed charge. The consumer tried to invoke Florida law in the form of certain personal injury protection ("PIP") statutes to lower the charges of an air ambulance company that presented a bill of $27,975.90. *Id*. at 1264. The Court found, however, that the Airline Deregulation Act expressly preempted the plaintiff's state-law claims for violations of Florida's Deceptive and Unfair Trade Practices Act and Florida's Consumer Collections Practices Act. *Id*., at 1272 ("Because Bailey's claims invoke the balance billing provision as 'a means to guide and police' AMC's rates, the ADA preempts his action.") (citing *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228, 115 S.Ct. 817, 823, 130 L.Ed.2d 715 (1995)). In so holding, the Eleventh Circuit rejected the plaintiff's contention that the McCarran–Ferguson Act saved the state-law claims from preemption by the Airline Deregulation Act.

*Id.*, at 1274 (relying on *Grp. Life & Health Ins. Co. v. Royal Drug. Co.*, 440 U.S. 205, 216–17, 99 S.Ct. 1067, 1075–76, 59 L.Ed.2d 261 (1979) for the proposition that contractual arrangements between an insurance company and pharmacies did not constitute the business of insurance because those arrangements surrounded the relationship with third parties and not the relationship "between insurer and insured").

The Eleventh Circuit's reasoning in *Bailey* applies with equal force in this case where an ambulance provider invokes Florida statutory and common law principles to shape the air carrier's pricing. Here, the air ambulance provider contends that certain Florida statutes (and common law theories) dictate a certain sum of money to compensate Plaintiff for its air medical transportation services. Plaintiff alleges it received "a substantially insufficient amount of money" in violation of section 627.64194 and "a substantially lower amount of money" than the amount required by section 641.513. *Id.*, at ¶37 and ¶46. These statutory provisions unquestionably have "the force and effect of law related to a price … of an air carrier" within the meaning of the Airline Deregulation Act's preemption clause, 49 U.S.C. § 41713(b)(1). "The state-imposed [methodology] on price thus cannot be enforced." *Bailey*, 889 F.3d at 1272. The statutory claims in Counts III and IV rest on legislative enactments that would shape (if applicable) the fee for Plaintiff's air medical transportation services. The claims "relate to" an air carrier's price and should be dismissed as preempted by the Airline Deregulation Act.

Preemption is triggered not only on statutory claims but common law claims as well. *See e.g., United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 607 (7th Cir.2000) (finding state common law claims count as an "other provision having the force and effect of

law" for the purposes of the preemption provision of the Airline Deregulation Act.); *Brown v. United Airlines, Inc.*, 720 F.3d 60, 66 (1st Cir. 2013) ("We hold that, to the extent that a state common-law claim relates to a price, route, or service of an air carrier, it is preempted by the [Airline Deregulation Act]"); *Stout v. Med-Trans Corp.*, 313 F. Supp. 3d 1289, 1295 (N.D. Fla. 2018) ("State common-law rules are also preempted [by the Airline Deregulation Act] because they are "provisions having the force and effect of law" similar to state statutes and regulations."). In *Stout*, the district court in the Northern District of Florida recently dismissed claims for breach of implied contract and unjust enrichment against an air ambulance provider arising out of the provider's excessive charges. The court analyzed the content of the Florida causes of action and found that both claims resulted in the imposition of state policy-based standards. The claim for unjust enrichment was "not based on the parties' self-imposed obligations." *Id.*, at 1295. Rather, "it constitute[d] a state-imposed obligation and [was] therefore preempted." Similarly, the claim for implied contract relied upon community standards to supply a rate rather than a private agreement. "Imposing state-policy based rates is exactly what the [Airline Deregulation Act's] preemption provision seeks to prevent. Accordingly, Plaintiffs' claim for breach of an implied-in-fact contract [was] preempted by the [Airline Deregulation Act]." *Id.*, at 1298.

  In a dispute similar to this one, a district court in the Southern District of Florida found the Airline Deregulation Act preempted an air ambulance provider's claims for unjust enrichment and quantum meruit against a health insurance company. *Reva, Inc. v. Humana Health Benefit Plan of Louisiana, Inc.*, 2018 WL 1701969 (S.D. Fla. Mar. 19, 2018). The district court reviewed Supreme Court precedent and observed that the provider's claims did

"not rely on a contract voluntarily undertaken" by the air ambulance provider and the health insurer. *Id*., at *6. Instead, the common law claims "turn[ed] on sources external to any agreement between the parties - such as considerations of equity and morality." *Id*., (internal citation omitted). Since the air ambulance provider's claims sought reimbursement for emergent air transport services based on its standard charges, the claims were preempted by the Airline Deregulation Act. *Id*., at *7. The same result should obtain in this case where Plaintiff's common law claims depend upon community standards or equitable considerations to arrive at "fair value" of the services rendered. Complaint at ¶24 and ¶30. As in *Reva*, the common law claims must yield to express preemption by the Airline Deregulation Act.[1]

### B. Neither Florida Statute § 627.64194 Nor Florida Statute § 641.513 Applies to the Policy In Question Because The Policy Was Delivered In Louisiana.

Each count of the Complaint incorporates factual allegations at paragraphs 1-18. These incorporated "Statements of Fact" include allegations about H.P.'s status as an "insured beneficiary under a health care policy provided by Defendant" and Defendant's alleged coverage obligation(s) under "the Insured's plan." Complaint at ¶9 and ¶13. *But for* the existence of the "health care policy" that furnishes coverage to enrolled participants like

---

[1] Another form of federal preemption, known as "defensive preemption" under the Employee Retirement Income Security Act of 1974 ("ERISA"), may also prohibit Plaintiff from relying on state law. Much like the Airline Deregulation Act, ERISA includes an express preemption clause, 29 U.S.C. § 1144(a). Defensive preemption applies broadly to any claim that "relates to" an ERISA-governed health plan, and may be pled as "an affirmative defense to state law claims." *In re Managed Care Litig.,* 298 F.Supp.2d 1259, 1288 (S.D.Fla.2003) (*citing Butero v. Royal Maccabees Life Incs. Co*., 174 F.3d 1207, 1211 (11th Cir.1999)), United reserves the right to plead ERISA defensive preemption as an affirmative defense in the event that any state-law claim survives dismissal on the grounds stated in this Motion. *Garren v. John Hancock Mut. Life Ins. Co*., 114 F.3d 186, 187 (11th Cir. 1997) ("A party's state law claim "relates to" an ERISA benefit plan for purposes of ERISA preemption whenever the alleged conduct at issue is intertwined with the refusal to pay benefits.")

H.P., there would be no basis for Plaintiff to demand payment from United. Since the "health care policy" is central to the Complaint and referenced throughout the pleading, this Court may review it in determining whether Plaintiff states a plausible claim for relief. The Group Policy and its Certificate of Coverage are attached at Exhibit "A" to this Motion. *Brooks v. Blue Cross & Blue Shield of Fla*., Inc., 116 F.3d 1364, 1369(11th Cir.1997) (finding that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

The insurance coverage that forms the basis of this action is furnished through a Group Policy purchased by an employer named PSI Midstream. The Group Policy identifies PSI Midstream as the "Enrolling Group" with a Louisiana address of 5526 Gulf Beach Hwy, Cameron, LA 70631. *See* Group Policy's Exhibit 1 ("The parties to this Policy are UnitedHealthcare Insurance Company, and PSI MIDSTREAM, the Enrolling Group."). The Group Policy specifies the place of issuance and the applicable state law (if any) as follows: "We are delivering this Policy in the State of Louisiana . . . ***To the extent that state law applies, the laws of the State of Louisiana are the laws that govern this Policy***." *Id*., (emphasis supplied).

The Group Policy includes a Certificate of Coverage ("COC") which outlines he benefits offered to eligible employees of the Enrolling Group. The COC includes the same statement about the Louisiana place of issuance and applicable Louisiana state law, to the

extent any state law applies. *See* COC at page 1. Throughout the document, the COC informs that the Group Policy is subject to Louisiana law (when applicable). For example, the COC states that the Group Policy provides "Benefits for Severe Mental Illness as required by Louisiana law." *See* Section 1: Covered Health Services, pg. 14 of COC. The COC lists a series of "Additional Benefits Required by Louisiana Law" such as Attention Deficit Disorder Services and Cleft Lip and Cleft Palate Services. *Id*., at pgs. 21-22. The COC includes a Subrogation Amendment which "reflects changes in requirements of insurance law of the State of Louisiana." *Id*., at Subrogation Amendment to COC. Finally, the COC makes frequent reference to Louisiana licensing or regulatory bodies such as the Louisiana Department of Health and Hospitals and the Louisiana Department of Insurance. *Id*., COC at pg. 35 and Subrogation Amendment at pg. 3.

The Florida Supreme Court has "long adhered" to the rule of *lex loci contractus*. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So.2d 1160, 1163 (Fla.2006). In the context of insurance contracts, that rule provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties. *Id*. (citing *Sturiano v. Brooks*, 523 So.2d 1126, 1129 (Fla.1988)). The Group Policy leaves no question as to where the contract was delivered - in the State of Louisiana. Yet Plaintiff attempts to remedy purported violations of Florida insurance and HMO statutes. These Florida statutes do not (and cannot) regulate the contract of insurance that PSI Midstream purchased for its employees and their eligible dependents.

The Florida insurance statute § 627.64194 defines the word "Insured" as follows: "Insured" means a person who is covered under an individual or group health insurance

policy *delivered or issued for delivery in this state* by an insurer authorized to transact business in this state. § 627.64194(1)(c) (emphasis supplied). Plaintiff alleges at paragraph ¶34 that United violated a duty under § 627.64194(4) to pay "nonparticipating providers such as Plaintiff for both non-emergency and emergency services rendered to an insured, such as [H.P.]." However, nowhere does Plaintiff allege any facts to show that its customer - H.P. - was covered by a policy delivered in the State of Florida. Plaintiff stops short of alleging this critical fact. Although Plaintiff alleges as a general matter that United "engage[s] in the business of providing health care insurance in the State of Florida," Complaint at ¶5, Plaintiff makes no mention of whether H.P. is insured by any policy delivered or issued for delivery in Florida. While a Complaint need not provide detailed factual allegations, "naked assertion[s]" bereft of "further factual enhancement" do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).[2]

Even if Plaintiff had made such an allegation, it would be negated by the terms of the subject Group Policy and COC. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); *Eiras v. Fla.*, 239 F. Supp. 3d 1331, 1342 (M.D. Fla. 2017) ("Although the Court must construe all factual allegations in favor of Plaintiff at this stage, when the Court considers exhibits attached to a motion to dismiss, and those exhibits directly

---

[2] Notably, Plaintiff alleges nothing about the residency of its customer H.P., or the employer/policyholder. The only information that Plaintiff furnishes about H.P., is that she "was the victim of an accident" in St. George Grenada, and she was an insured under "a" policy provided by United. *See* Complaint at ¶9 and ¶10. It is doubtful that Plaintiff could allege policy delivery in Florida within the precepts of Rule 11.

12

contradict the allegations in the pleading, the exhibits govern."). There is no predicate to sue under the terms of § 627.64194 when, as here, there is no insurance policy delivered in the State of Florida. In the absence of any factual allegations sufficient to invoke the Florida insurance statute § 627.64194, Count III must be dismissed. By its terms, the statute does not apply.

Similarly, the Florida HMO statute only regulates HMOs specifically "authorized" under the Florida statute. *See* Fla. Stat. §641.19(12) (a "Health Maintenance Organization" is "any organization authorized under this part, which provides, through arrangements with other persons, emergency care, inpatient hospital services, physician care including care provided by physicians licensed under chapters 458, 459, 460, and 461, ambulatory diagnostic treatment, and preventive health care services . . . .").

Part III of Chapter 641, which houses § 641.513, defines the word "Organization" to mean "***any health maintenance organization as defined in s. 641.19*** and any prepaid health clinic as defined in s. 641.402." *See* Definitions Fla. Stat § 641.47(13) (emphasis supplied). Part III of Chapter 641 also explains that any entity operating as an HMO in Florida must obtain "a certificate of authority" to do business and any applications for a certificate must be made in conformity with Fla. Stat. § 641.48.

As this regulatory framework illustrates, Florida distinguishes HMOs from traditional insurance entities. Although Plaintiff's Complaint reads as though both the Florida insurance statute *and* the Florida HMO statute can apply simultaneously to the same "health care policy," the law takes care to differentiate an HMO from an insurance company. *See e.g., O'Reilly v. Ceuleers*, 912 F.2d 1383, 1389 (11th Cir. 1990) ("We must find that the district

court erred in disregarding the nature of IMC's business. It is not an insurance company. As defined by Florida law, it is a health maintenance organization which provides health care services to persons on a prepaid basis…"); *Quilty v. Envision Healthcare Corp.*, 2018 WL 2445824, at *3 (M.D. Fla. May 31, 2018) (plaintiff lacked standing to sue for violation of insurance statute § 627.64194 when he "was not injured by a violation of the PPO balance-billing statute, as he did not have [an insurance] plan."); and *Dearmas v. Av-Med, Inc.*, 814 F. Supp. 1103, 1107 (S.D. Fla. 1993) (recognizing that "an HMO is not an insurance company"). The Group Policy and COC show that H.P. was *not* enrolled as a "subscriber" in any "health maintenance organization" within the meaning of Chapter 641, Florida Statutes. As a result, Plaintiff fails to state a plausible claim for relief in Count IV of the Complaint.

C.  **Air Ambulance Services Are Beyond The Purview of § 627.64194 and § 641.513.**

Plaintiff alleges that United violated Florida statutes § 627.64194 and § 641.513 by failing to pay benefits in accordance with those statutory provisions. However, neither statute applies to air ambulance services. This is precisely the conclusion that was drawn in *Reva, Inc. v. Humana Health Benefit Plan of Louisiana, Inc.*, 2018 WL 1701969 (S.D. Fla. Mar. 19, 2018) where the court examined the scope and definitional framework of § 627.64194 and § 641.513.

The court in *Reva* reviewed the language of Florida Statute section 627.64194(2) which states "[a]n insurer is solely liable for payment of fees to a nonparticipating provider of covered emergency services provided to an insured in accordance with the coverage terms of the health insurance policy...." Fla. Stat. § 627.64194(2). As used in that section, the phrase "emergency services" means "emergency services and care, as defined in s. 641.47(8),

*which are provided in a facility.*" *Id*. § 627.64194(1)(a) (emphasis supplied). Section 641.47(8), in turn, states:

> "Emergency services and care" means medical screening, examination, and evaluation by a physician or, ... by other appropriate personnel under the supervision of a physician, to determine if an emergency medical condition exists, and if it does, the care, treatment, or surgery for a covered service by a physician necessary to relieve or eliminate the emergency medical condition within the service capability of a hospital.

*Id*. As the *Reva* court recognized, a "facility" includes only those "licensed facilities as defined in § 395.002(16) and an urgent care center as defined in § 395.002." *See* Fla. Stat. 627.64194(1)(b). And § 395.002(16) defines a "licensed facility" as "a hospital, ambulatory surgical center, or mobile surgical facility." Plaintiff has not alleged - and cannot allege - that it rendered care "in a facility." The air medical transportation services do not constitute "emergency services and care" within the meaning of § 627.64194 or § 641.513.[3] *Id*., at *5 ("Plaintiff clearly does not present plausible facts bringing it within the reach of the cited statutes. The only services described in the Amended Complain are air ambulance services and emergency transport services."). Since the services that Plaintiff rendered are beyond the purview of § 627.64194 or § 641.513, Counts III and IV of the Complaint should be dismissed.

---

[3] Section 641.513 is an HMO regulatory provision entitled "Requirements for providing emergency services and care." This statute concerns the conduct of an HMO "[i]n providing for emergency services and care as a covered service." Fla. Stat. § 641.513(1). Plaintiff cites § 641.513(5) which addresses "[r]eimbursement for services *pursuant to this section* by a provider who does not have a contract with the health maintenance organization...." *Id.* (emphasis added). And "services pursuant to this section" refers to "emergency services and care" as used in section 641.47(8). Section 641.47 sets forth a number of "Definitions" for key terms used throughout Part III which includes § 641.513(5).

15

### D. Plaintiff Fails To State Claims for Unjust Enrichment and Quantum Meruit.

Plaintiff's claims for unjust enrichment and quantum meruit are defective for various independent reasons. "Florida law prescribes four elements for quantum meruit and unjust enrichment claims. First, the plaintiff must have conferred a benefit on the defendant. Second, the defendant must have knowledge of the benefit. Third, the defendant must have accepted or retained the benefit conferred. Fourth, the circumstances must be such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *Merle Wood & Assocs., Inc. v. Trinity Yachts*, LLC, 714 F.3d 1234, 1237 (11th Cir. 2013) (internal citations omitted); *Absolute Marine Towing & Salvage, Inc. v. S/V Iniki*, 2010 WL 2652466, at *3 (M.D. Fla. June 22, 2010) ("Under Florida law, the elements of a claim for unjust enrichment are the same as those for a quantum meruit claim.").

The Complaint fails to allege facts to show a benefit conferred on the Defendant. United has not been unjustly enriched because United did not request nor receive the services provided by Plaintiff. A number of courts have found that a provider of health care does not confer a benefit upon the plan's insurer simply by delivering a service to individuals who are enrolled in that plan. *See e.g., Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.,* 2015 WL 2198470, at *5 (S.D. Fla. May 11, 2015) ("If the contract is 'implied in law,' then Laboratories fail to state a claim as a matter of law. An element of an 'implied in law' contract is that 'the plaintiff has conferred a benefit on the defendant.' However, a healthcare provider who provides services to an insured does not benefit the insurer."); *Hialeah Physicians Care, LLC v. Connecticut Gen. Life Ins. Co.*, 2013 WL 3810617, at *4 (S.D. Fla. July 22, 2013) (dismissing with prejudice an out-of-network medical provider's claims for

16

quantum meruit and unjust enrichment while noting: "HPC can hardly be said to have conferred any benefit, even an attenuated one, upon the Plan's insurer by providing Plan beneficiaries with health care services."); and *Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co.*, 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 2004) (dismissing provider's unjust enrichment claim because "as matter of commonsense, the benefits of healthcare treatment flow to patients, not insurance companies"). H.P. received the benefit of Plaintiff's air medical transportation services. United discharged its sole obligation when it made the insurance payment under the policy.

  Furthermore, there are no allegations to suggest that United knew of Plaintiff's intention to transport H.P. from St. George, Grenada to Tampa, Florida. This is not a scenario where the provider contacted the insurer in advance to notify of the proposed service. The only (constructive) knowledge that United obtained about the air ambulance service is the knowledge it acquired *after-the-fact* of transportation. In the absence of any allegations to suggest that United knew about the "benefit," no recovery can be had for unjust enrichment or quantum meruit. *Absolute Marine Towing & Salvage, Inc. v. S/V Iniki*, 2010 WL 2652466, at *2 (M.D. Fla. June 22, 2010) ("Second, there are no facts pled in the Second Amended Complaint from which one could infer that Markel was even aware of the salvage of the Iniki while it was occurring, much less that Markel agreed to the salvage contract with Absolute Marine. Such knowledge and acceptance are fundamental requirements of a claim for quantum meruit"). Plaintiff has not alleged inequitable circumstances to substantiate its claims of unjust enrichment and quantum meruit. *Timothy H. Kenney, P.A. v. Sec. Bank, N.A.*, 2013 WL 12095559, at *5 (S.D. Fla. June 3, 2013) ("Generally alleging the existence

of inequitable circumstances, without more, amounts to a threadbare recital of an element without fair notice of the grounds upon which it rests."). As a result, Counts I and II of the Complaint should be dismissed.

## Conclusion

Plaintiff's state-law claims have a significant impact on an air carrier's prices. They are forbidden by the preemptive force of the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1). But even if the claims could escape preemption, they remain subject to dismissal. Counts I and II fail to plead facts to show that United was unjustly enriched. Counts III and IV rely on statutes that are wholly inapplicable. For each and all of these reasons, the Complaint should be dismissed.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 23, 2018, the foregoing document was filed with the Clerk of the Court using CM/ECF. I further certify that I emailed the foregoing document to: Paul S. Kimsey, Esq., Kimsey Law Firm, P.A., 4012 Gunn Hwy., Suite 140, Tampa, Florida 33618, Telephone: 813-549-1001, Facsimile: 813.265.1752, Email: pkimsey@kimseylaw.com; *counsel for Plaintiff*.

        s / Daniel Alter_____
        DANIEL ALTER
        Florida Bar No. 0033510
        dan.alter@gray-robinson.com
        GRAY ROBINSON, P.A.
        401 East Las Olas Boulevard, Suite 1000
        Fort Lauderdale, Florida 33301
        Telephone: (954) 761-8111
        *Counsel for Defendant*