UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WORLDWIDE AIRCRAFT SERVICES,
INC. d/b/a Jet I.C.U.,

        Plaintiff,

v.                                  Case No. 8:18-cv-2549-T-24 TGW

UNITED HEALTHCARE INSURANCE
COMPANY,

        Defendant.
_____/

**ORDER**

This cause comes before the Court on Defendant's Motion to Dismiss. (Doc. No. 3). Plaintiff opposes the motion. (Doc. No. 4). As explained below, Defendant's motion is granted, but Plaintiff is granted leave to amend its complaint as set forth herein.

**I. Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.

(citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

**II. Background**

Plaintiff Worldwide Aircraft Services, Inc., an air ambulance provider, alleges the following in its complaint (Doc. No. 1-3): On August 28, 2016, H.P. ("Insured") was an insured beneficiary under a health insurance policy provided by Defendant United Healthcare Insurance Company ("United"). On that date, Insured was the victim of an accident in St. George, Grenada that caused life-threatening injuries. Insured required air medical transportation, because the facility in which Insured was initially treated lacked the capability to adequately treat her.

At the time, Plaintiff did not have a pre-negotiated contract with United, and Plaintiff was not part of United's provider network. However, United authorized Plaintiff to transport Insured from St. George, Granada to St. Joseph's Hospital in Tampa, Florida for medical care. Plaintiff transported Insured, and Plaintiff billed United for the medical air transport services. United acknowledged and agreed that Insured's plan covered air ambulance services, as evidenced by United's partial payment to Plaintiff.

Plaintiff contends that United grossly underpaid it for its services. As a result, Plaintiff asserts four claims: (1) Unjust Enrichment, (2) Quantum Meruit, (3) Violation of Florida Statute § 627.64194, and (4) Violation of Florida Statute § 641.513. In response, United filed the instant

2

motion to dismiss.

### III.  Motion to Dismiss

United moves to dismiss all four claims, arguing that: (1) the claims are preempted under the Airline Deregulation Act, and (2) the claims are not sufficiently pled.  Accordingly, the Court will discuss preemption under the Airline Deregulation Act and then analyze each claim.

#### A.  Preemption Under the Airline Deregulation Act

In 1978, Congress enacted the Airline Deregulation Act ("ADA") because it believed that competitive market forces would encourage efficiency, innovation, and low prices, as well as variety and quality of air transportation services.  See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992).  "To ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a pre-emption provision, prohibiting the States from enforcing any law 'relating to rates, routes, or services' of any air carrier."  Id. at 378–79.  The ADA's preemption provision states: "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart."  49 U.S.C. § 41713(b)(1).  As such, state law actions having a connection with or reference to airline rates, routes, or services are preempted.  See Morales, 504 U.S. at 384.  State common law claims are included within the preemption provision.  Northwest, Inc. v. Ginsberg, 572 U.S. 273, 281 (2014).

While "the ADA's preemption prescription bars state-imposed regulation of air carriers, . . . [it] allows room for court enforcement of contract terms set by the parties themselves." American Airlines v. Wolens, 513 U.S. 219, 222 (1995).  As explained by the Wolens Court:

> The ADA's preemption clause . . . stops States from imposing their

> own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an [air carrier] dishonored a term the [air carrier] itself stipulated. This distinction between what the State dictates and what the [air carrier] itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

Id. at 232–33. As such, a state law "claim is preempted if it seeks to enlarge the contractual obligations that the parties voluntarily adopt[ed]." Ginsberg, 572 U.S. at 276. However, terms and conditions that air carriers offer, and which are accepted, are privately ordered obligations that can be enforced through a breach of contract claim, even if the claim relates to the air carrier's rates, routes, or services. Id. at 281.

The preemption issue can become more difficult when a party seeks relief via an implied duty, such as an implied covenant of good faith and fair dealing. In Ginsberg, the plaintiff filed suit against an airline and included a claim for breach of the covenant of good faith and fair dealing due to the airline terminating his membership in the airline's frequent flyer program. See id. at 278. The Court looked at the state law of Minnesota (the state law that applied to the case) to determine whether the implied covenant of good faith and fair dealing must be regarded as a state-imposed obligation and thus preempted by the ADA. Id. at 286. The Court noted that under Minnesota law, parties cannot contract out of the implied covenant of good faith and fair dealing. Id. at 287. The Court then determined that Minnesota's unwillingness to allow people to disclaim the obligation of good faith and fair dealing shows that such obligation is, in fact, imposed by state law and thus preempted by the ADA. See id. The Court noted that "[a] State's implied covenant rules will escape preemption only if the law of the relevant State permits an [air carrier] to contract around those rules in its . . . agreement." Id. at 288. The Court concluded

4

that because the plaintiff's implied covenant of good faith and fair dealing claim sought to enlarge his contractual agreement with the airline under its frequent flyer program, his claim was preempted. See id. at 289.

## B. Unjust Enrichment

Plaintiff asserts an unjust enrichment claim, arguing that United is being unjustly enriched by failing to pay Plaintiff for the full and fair value of the services Plaintiff provided. United argues that this claim must be dismissed, because it is preempted by the ADA. The Court agrees with United.

Courts analyzing whether unjust enrichment claims are preempted by the ADA find that such claims are preempted. See Scarlett v. Air Methods Corp., 2018 WL 2322075, at *7–9 (D. Col. May 22, 2018); Cox v. Spirit Airlines, Inc., 2018 WL 6168086, at *4 (E.D.N.Y. Nov. 20, 2018); Reva, Inc. v. Humana Health Benefit Plan of La., Inc., 2018 WL 1701969, at *6 (S.D. Fla. Mar. 19, 2018); Stout v. Med-Trans Corp., 313 F. Supp.3d 1289, 1296 (N.D. Fla. 2018). As explained by one court:

> Under Florida law, a claim for unjust enrichment is not based on the parties' agreement but rather [is] an agreement created by law. An unjust enrichment claim provides a mechanism for recovery when the court deems it unjust for one party to have received a benefit without paying compensation for the value thereof. Since a claim for unjust enrichment is not based on the parties' "self-imposed obligations," it constitutes a state-imposed obligation and is therefore preempted.

Stout v. Med-Trans Corp., 313 F. Supp.3d at 1296 (internal citations omitted). Thus, because an unjust enrichment claim can exist only where there is no agreement between the parties, an unjust enrichment claim is "the antithesis of enforcing 'a term the [air carrier] itself stipulated,'

5

and rather [is] an example of a state 'imposing [its] own substantive standards.'" Cox, 2018 WL 6168086, at *4 (quoting Wolens, 513 U.S. at 232–33). Accordingly, the Court dismisses Plaintiff's unjust enrichment claim, because it is preempted by the ADA.

**C. Quantum Meruit**

Plaintiff asserts a quantum meruit claim, in which Plaintiff seeks damages in an amount equal to the reasonable value of the services that it rendered. United argues that this claim must be dismissed, because it is preempted by the ADA.

Courts and parties sometimes refer to quantum meruit claims as implied-in-fact contract claims and sometimes as implied-in-law contract claims. See, e.g., Toolltrend, Inc. v. CMT Utensili, SRL, 198 F.3d 802, 806 (11th Cir. 1999)(stating that quantum meruit claims derive from contacts implied-in-fact); Reva, 2018 WL 1701969, at *4 (stating that quantum meruit claims derive from contacts implied-in-law). Implied-in fact contracts under Florida law can be described as follows:

> A contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words. Where an agreement is arrived at by words, oral or written, the contract is said to be "express." A contract implied in fact is not put into promissory words with sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement. It is to this process of defining an enforceable agreement that Florida courts have referred when they have indicated that contracts implied in fact "rest upon the assent of the parties." The [Florida] supreme court described the mechanics of this process [as follows] . . . : [A] [c]ourt should determine and give to the alleged implied contract the effect which the parties, as fair and reasonable men, presumably would have agreed upon if, having in mind the possibility of the situation which has arisen, they had contracted expressly thereto.

> Common examples of contracts implied in fact are where a person performs services at another's request, or where services are rendered by one person for another without his expressed request, but with his knowledge, and under circumstances fairly raising the presumption that the parties understood and intended that compensation was to be paid. In these circumstances, the law implies the promise to pay a reasonable amount for the services.

Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co., Inc., 695 So.2d 383, 385–86 (Fla. 4th DCA 1997)(internal citations and quotation marks omitted).

Some courts have found that the ADA treats implied-in-fact contract claims differently from implied-in-law contract claims.[1] For example, in Medical Mutual of Ohio v. Air Evac EMS, Inc., 2018 WL 4411695, at *8 (N.D. Ohio Sept. 17, 2018), the court found that the plaintiff's breach of implied-in-fact contract claim was not preempted by the ADA. Likewise, the court in Wagner v. Summit Air Ambulance, LLC, 2017 WL 4855391 (D. Mont. Oct. 26, 2017), found that the plaintiff's breach of implied-in-fact contract claim might not be preempted by the ADA.

In Wagner, the plaintiffs alleged that they authorized the air carrier companies to provide air ambulance services for their son. See id. at *1. The air carrier companies did not specify a price for their services. See id. Thereafter, the air carrier companies attempted to collect the balance due of over $40,000 after the plaintiffs' insurer paid a portion. See id. The plaintiffs filed suit against the air carrier companies, alleging that the air carrier companies' bill exceeded the reasonable amount typically charged by similar air-ambulance transport services, and thus,

---

[1] As previously discussed, an unjust enrichment claim is an example of a claim based on a contract implied-by-law. See Commerce Partnership, 695 So.2d at 386.

the air carrier companies violated the duty of good faith and fair dealing under Montana law. See id.

The court noted that under Montana law, when a contract fails to specify consideration, consideration must be so much money as the object of the contract is reasonably worth. See id. at *5. The plaintiffs argued that the duty of good faith and fair dealing supplied a default price term of *a reasonable amount* for the parties' implied-in-fact contract. See id. at *3.

The air carrier companies moved to dismiss, arguing that the plaintiffs' claim was preempted by the ADA. See id. at *2. The court focused on whether the air carrier, under the applicable Montana law, could contract around the covenant of good faith and fair dealing, and the court found that the air carrier could. See id. at *3. The court then stated that nothing in the ADA prohibits an air carrier from opting for a default price term, and the ADA would not preempt the plaintiffs' claim if the air carrier companies had incorporated the default price term as alleged by the plaintiffs. See id. at *4. The court stated that the Wolens and Ginsberg decisions "leave room for suits . . . that seek to vindicate the *parties'* understanding of the contract." Id. The court pointed out that the "[p]laintiffs contend that the parties' understanding of the contract reasonably assumed that [the air carrier companies] would charge 'reasonable worth' absent a price specified." Id. As a result, the court denied the air carrier companies' motion to dismiss and noted that "[d]ismissal of the novel question presented by [p]laintiffs' complaint would be especially disfavored." Id. at *5.

In the instant case, Plaintiff pleads its quantum meruit claim by stating that United will be unjustly enriched if it is not required to pay Plaintiff an amount equal to the reasonable value of

8

the services that Plaintiff rendered. As pled, Plaintiff does not clearly allege that this is a claim for breach of a contract implied-in-fact, as opposed to a preempted claim for breach of a contract implied-in-law. As such, the Court dismisses the claim as pled, and the Court will allow Plaintiff to amend its complaint to assert a claim for a breach of an implied-in-fact contract.

Thus, Plaintiff must allege sufficient facts to show that Plaintiff and United entered into a contract as demonstrated by their conduct. This would be consistent with the Eleventh Circuit's interpretation of Wolens, in which the Bailey court stated: "[A]n air carrier may bring a state action to enforce the terms of a contract, whether express or implied, . . . so long as the action concerns voluntary commitments and not state-imposed obligations." Bailey v. Rocky Mountain Holdings, LLC, 889 F.3d 1259, 1268 (11th Cir. 2018)(citing Wolens, 513 U.S. at 232–33).

This means that Plaintiff will have to allege (and later ultimately prove) that based on Plaintiff and United's conduct, they entered into an implied-in-fact contract. Whether a reasonable price can be implied by law once an implied-in-fact contract is shown to exist is a difficult question in the context of the ADA, and there is sparse case law on the issue. For example, in Medical Mutual of Ohio, the court stated that "the possibility that a reasonable price term may be supplied for the contract implied-in-fact—if it is found to exist—does not affect whether the ADA preempts the breach of [implied] contract claim." Medical Mutual of Ohio, 2018 WL 4411695, at *8. If implying a reasonable price simply enforces the intent of the parties, then such is not preempted by the ADA. See Stout, 313 F. Supp.3d at 1295 (stating that "whether a contract claim is preempted depends on the extent to which the doctrine is employed to effectuate the pubic policies of the given state rather than to enforce the intent of the parties"). However, implying a reasonable price would contravene the ADA if an air carrier sues on an

9

implied-in-fact contract to collect on a bill that charges in excess of what is found to be a reasonable price and the air carrier cannot produce evidence that the parties implicitly agreed to the billed rate.

In the instant case, Plaintiff is attempting to collect on an implied-in-fact contract for a reasonable price, and as such, this specific implied-in-fact contract claim will not impede on Plaintiff's ability to price its services without state interference. It makes sense to allow this claim to proceed, because otherwise, assuming that Plaintiff can prove that an implied-in-fact contract did exist between it and United, Plaintiff would be left without a remedy. As such, the Court will allow Plaintiff to pursue a breach of implied-in-fact contract claim at this time. However, as the case law in this area develops, the Court may re-evaluate the viability of this claim.

### D. Violations of Florida Statutes

Plaintiff asserts claims for violations of Florida Statutes § 627.64194(4) and § 641.513(5). Section 627.64194(4), which is part of the PPO balance-billing statute[2], provides that an insurer must pay a non-participating provider for certain services based on the directive set forth in § 641.513(5), which relates to HMOs[3]. Section 641.513(5) provides that the amount that the insurer must pay is the lesser of: (1) the provider's charges, (2) the usual and customary provider charges for similar services in the community where the services were provided, or (3)

---

[2] Florida Statute § 627.64194 is the Preferred Provider Organization ("PPO") balance-billing statute. See Quilty v. Envision Healthcare Corp., 2018 WL 2445824, at *4 (M.D. Fla. May 31, 2019).

[3] Florida Statute § 641.513(5) relates to Health Maintenance Organizations ("HMOs"). See Quilty, 2018 WL 2445824, at *4.

the charge agreed upon by the insurer and provider within sixty days of the provider's submittal of the claim. United moves to dismiss both of these claims.

### 1. Florida Statute § 627.64194

Plaintiff claims that United violated Florida Statute § 627.64194(4) by not paying Plaintiff for its services based on the directive set forth in § 641.513(5). United moves to dismiss, arguing that Florida Statute § 627.64194(4) is not applicable. Specifically, § 627.64194 applies to services provided to an "insured," which is defined as "a person who is covered under . . . [a] group health insurance policy delivered or issued for delivery in [Florida] by an insurer authorized to transact business in [Florida]." Fla. Stat. § 627.64194(1)(c). United points out that Plaintiff fails to allege that the insurance policy was delivered or issued for delivery in Florida. In fact, United attaches the insurance policy at issue, which shows that it was delivered in Louisiana. (Doc. No. 3-1, p. 12). Accordingly, the Court agrees that this claim must be dismissed. Plaintiff asks for leave to amend to assert claims under Louisiana law. While the Court will allow such an amendment, Plaintiff should be mindful of United's preemption arguments under the ADA. By allowing such an amendment, the Court is not finding that such Louisiana claims will survive preemption.

### 2. Florida Statute § 641.513

Plaintiff claims that United violated Florida Statute § 641.513(5) by not paying Plaintiff for its services based on the directive set forth therein. As previously stated, § 641.513(5) provides that the amount that the insurer must pay is the lesser of: (1) the provider's charges, (2) the usual and customary provider charges for similar services in the community where the

11

services were provided, or (3) the charge agreed upon by the insurer and provider within sixty days of the provider's submittal of the claim. United moves to dismiss this claim, arguing that it is not an HMO, and as such, § 641.513(5) is not directly applicable to it.

Plaintiff, however, has alleged in the complaint that United is an HMO. (Doc. No. 1-3, ¶ 5). As such, the Court accepts this allegation as true and denies United's motion to dismiss on this ground.

United also argues that this claim is preempted by the ADA, because § 641.513(5) has "the force and effect of law related to a price" Plaintiff can receive for its air ambulance services. The Court agrees with United that to the extent that § 641.513(5) applies in this case,[4] it is preempted, because it directly specifies the price that an HMO insurer must pay for Plaintiff's air ambulance services. See Air Evac EMS, Inc. v. Sullivan, 331 F. Supp.3d 650, 662, 664 (W.D. Tx. 2018)(finding that a Texas statute that restricted how much an air ambulance could receive for its services had "a forbidden significant effect on" the air carrier's prices and thus was preempted by the ADA).

In a footnote, Plaintiff argues that this claim is saved from preemption by the McCarran-Ferguson Act ("MFA"). "The MFA prevents a federal statute from preempting state law if (1) the federal statute at issue does not specifically relate to the business of insurance; (2) the state statute at issue was enacted for the purpose of regulating the business of insurance; and (3) application of the federal statute would invalidate, impair, or supersede the state statute." Bailey, 889 F.3d at 1273 (quotation marks and citations omitted). As explained below, the MFA does

---

[4]United argues that § 641.513(5) is inapplicable for other reasons, but the Court need not reach such arguments because the Court finds that this claim is preempted.

not apply, because § 641.513(5) was not enacted for the purpose of regulating the business of insurance.

In order to determine whether § 641.513(5) was enacted for the purpose of regulating the business of insurance, the Court is mindful of the following:

> [T]he "core" of the phrase [business of insurance] centers on "[t]he relationship between insurer and insured, the type of policy which could be issued, and [that policy's] reliability, interpretation, and enforcement." . . . [There is] a three-part test to determine whether a state law regulates a practice that comes within the business of insurance: "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." "Each of these criteria works in tandem with the others," and no single criterion "is necessarily determinative in itself."

Id. (internal citations omitted).

The Court finds that the Sullivan case is instructive for determining whether § 641.513(5) was enacted for the purpose of regulating the business of insurance. In Sullivan, a Texas workers' compensation statute limited the amount that providers could be reimbursed based on certain rate guidelines. See Sullivan, 331 F. Supp.3d at 655. The court first determined that the Texas statute, when applied to air ambulances, was preempted by the ADA. See id. at 664. In determining whether the MFA saved the Texas statute from preemption by the ADA, the court stated the following:

> The practice at issue [under the Texas statute] is how much an air ambulance provider can bill for its services. Rather than transferring or spreading risk, this practice concerns the size and recovery of third-party costs. Constraining third-party costs "may well inure to the

> benefit of policyholders" but is not the business of insurance. A third-party health care provider's rate is not an integral part of the policy relationship between the insurer and the insured. And, likewise, a health care provider's rate is not a practice limited to entities within the insurance industry. Thus, the Court finds the regulated practice does not constitute the business of insurance within the meaning of [the MFA].

Id. at 665–66 (internal citations omitted).

Likewise, in the instant case, the practice set forth in § 641.513(5) dictates how much an air ambulance can bill for its services. For the same reasons as set forth in Sullivan, this Court finds that § 641.513(5) was not enacted for the purpose of regulating the business of insurance. As such, the MFA does not save Plaintiff's claim based on § 641.513(5) from preemption. Accordingly, the Court grants United's motion to dismiss this claim.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) United's Motion to Dismiss (Doc. No. 3) is **GRANTED**.

(2) Plaintiff may file an amended complaint by *December 28, 2018* in order to assert a breach of implied-in-fact contract claim, as well as claims under Louisiana law. If Plaintiff fails to file an amended complaint by that date, the Court will close this case without further notice.

**DONE AND ORDERED** at Tampa, Florida, this 14th day of December, 2018.

Copies to:
Counsel of Record

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge