UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:18-cv-2549-T-24TGW

WORLDWIDE AIRCRAFT SERVICES, INC., d/b/a
JET I.C.U.,

    Plaintiff,

vs.

UNITED HEALTHCARE INSURANCE
COMPANY,

    Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant, UNITED HEALTHCARE INSURANCE COMPANY ("United"), moves to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) and in support thereof states as follows:

### Procedural History

This action by an out-of-network air ambulance provider was originally framed by a four-count Complaint for (i) Unjust Enrichment (ii) Quantum Meruit (iii) Violation of Fla. Stat. § 627.64194 and (iv) Violation of Fla. Stat. § 641.513. United moved to dismiss the initial pleading on the threshold basis that all of Plaintiff's state-law claims were expressly preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1) ("ADA"). This Court agreed that ADA preemption required dismissal of Plaintiff's claim for Unjust Enrichment because that theory of relief is not based on the parties' self-imposed obligations.

Rather, it constitutes a state-imposed obligation and is therefore preempted. *See* ECF No. 8, page 5 of 14 ("Thus, because an unjust enrichment claim can exist only where there is no agreement between the parties, an unjust enrichment claim is 'the antithesis of enforcing a term the [air carrier] itself stipulated,' and rather is an example of a state 'imposing [its] own substantive standards.'") (internal citations omitted). For similar reasons, this Court determined that Plaintiff's claim for Violation of Fla. Stat. § 641.513 could not withstand ADA preemption. *Id.*, at page 12 of 14 ("The Court agrees with United that to the extent that § 641.513(5) applies in this case, it is preempted because it directly specifies the price that an HMO insurer must pay for Plaintiff's air ambulance services.").

As for the other statutory claim that Plaintiff alleged in its initial pleading, Violation of Fla. Stat. § 627.64194, this Court did not reach a preemption conclusion because that claim was defective on more fundamental grounds. Namely, Plaintiff did not (and could not) allege that the insurance policy of its patient was issued and delivered in the State of Florida. Observing that the policy was in fact issued in Louisiana, this Court invited Plaintiff to re-plead claims under Louisiana law. In so doing, however, this Court cautioned Plaintiff "to be mindful of United's preemption arguments under the ADA." *Id.*, at page 11 of 14.

This Court was then left to consider the claim that Plaintiff labeled "Quantum Meruit." That claim was more challenging to assess (from a preemption standpoint alone) because its viability depended on whether Plaintiff sought to enforce an implied-in-fact contract or an implied-in-law contract. Given the uncertainty, this Court allowed Plaintiff to amend to try to plead a claim for breach of implied-in-fact contract. *Id.*, at page 9 of 14 ("As

pled, Plaintiff does not clearly allege that this is a claim for breach of contract implied-in-fact, as opposed to a preempted claim for breach of contract implied-in-law.").

This Court gave Plaintiff an outline of what to allege if Plaintiff wanted to advance a non-preempted claim for breach of implied-in-fact contract. At a minimum, Plaintiff would need to allege "***sufficient facts*** to show that Plaintiff and United entered into a contract ***as demonstrated by their conduct***." *Id*., at page 9 of 14 (emphasis added). Assuming Plaintiff could plead "sufficient facts" to show that United assented to the formation of an agreement for payment of air ambulance transport, then (and only then) could Plaintiff sue to enforce an implied-in-fact contract.

On December 20, 2018, Plaintiff filed its Amended Complaint with a single claim for breach of implied-in-fact contract. *See* Amended Complaint at ECF No. 9. However, Plaintiff failed to heed this Court's advice. Plaintiff does not allege any conduct in the form of communications or interactions between itself and United which could establish an implied contract between the two entities. Plaintiff does not furnish any details on *how* it interacted with United or even *when* it interacted with United in relation to the August 28, 2016 date of transport. Instead, Plaintiff relies on vague statements and conclusions of law to carry its claim. Without any *factual* underpinnings to substantiate an "agreement" between the parties on the subject of air ambulance pricing, Plaintiff's statements about what the parties "intended" ring hollow. *See* Amended Complaint at ¶20 and ¶21 (stating in conclusory terms that Plaintiff and Defendant "intended and assented" to a reasonable price for services rendered). These formulaic recitations of the elements of a cause of action are not adequate to state a cause of action under federal pleading standards. The Amended Complaint does not

allege a factual predicate to show the formation of an implied-in-fact contract. It must be dismissed with prejudice.

## **Standard of Review**

A cause of action must be dismissed if it "fail[s] to state a claim on which relief may be granted." Fed.R.Civ.P. 12(b)(6). As the Supreme Court held, "a plaintiff's obligation to provide the grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007). *See also Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955, 974 (11th Cir. 2008) (*Twombly* requires of all claims that the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965).

"Two working principles underlie" the *Twombly* decision. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id*. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id*. at 679. The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556.

"A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual

allegations." *Lopez v. Chase Bank USA, N.A.*, 2014 WL 690282, at *1 (M.D. Fla. Feb. 20, 2014).

Furthermore, a plaintiff cannot rely on its subjective belief regarding the formation of a contract. *See Robbie v. City of Miami*, 469 So.2d 1384, 1385 (Fla.1985) ("We have consistently held that an objective test is used to determine whether a contract is enforceable."); *See also In re Rolsafe Int'l, LLC*, 477 B.R. 884, 908 (Bankr. M.D. Fla. 2012) ("Under the objective test adopted by Florida courts, a party's mental reservations or unexpressed intentions simply cannot override outward expressions of assent. The Court must give credence to the objectively manifested intentions of the parties."). If there was acceptance by a defendant, "it must be found in a contract implied in fact by evaluating the circumstances under an objective standard." *W. Const., Inc. v. Fla. Blacktop, Inc.*, 88 So. 3d 301, 304 (Fla. 4th DCA 2012).

Against this backdrop, even construing Plaintiff's allegations liberally, the conclusory allegations of implied-in-fact contract are insufficient. The factual content offered in the Amended Complaint does not allow this Court to draw a reasonable inference that United *agreed* through communications (or other conduct) to pay Plaintiff any amount of money. Mutual assent to contract cannot be inferred under these circumstances because the allegations do not show that United did anything other than conduct itself pursuant to its obligations *under the health plan*. There is no basis to conclude that United acted according to a separate and tacit deal with Plaintiff. As a result, Plaintiff is not entitled to conduct discovery in an attempt to substantiate its claim. *Okereke v. Experian Info. Sols., Inc.*, 2018 WL 5631047, at *1 (M.D. Fla. Oct. 31, 2018) ("The standard on a 12(b)(6) motion is not

whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.").

## Argument

### Plaintiff Fails To State A Plausible Claim For Breach of Implied-in-Fact Contract

As with any other contract, an implied-in-fact contract requires the parties' mutual intent to enter into an agreement. *Hercules, Inc. v. United States*, 516 U.S. 417, 424 (1996) ("An agreement implied in fact is founded upon a ***meeting of minds***.") (internal quotations omitted and emphasis added); and *Baltimore & Ohio Ry. Co. v. United States*, 261 U.S. 592, 598, 43 S.Ct. 425, 67 L.Ed. 816 (1923) (stating that implied-in-fact contract "will not be implied unless the meeting of minds was indicated by some intelligible conduct, act or sign"). Thus, "to plausibly plead the existence of a contract implied-in-fact, [Plaintiff] must allege 'an offer, acceptance, consideration, mutual assent and intent to be bound' - the same elements required for an express contract." *Roman v. Tyco Simplex Grinnell*, 2017 WL 3394295, at *5 (M.D. Fla. Aug. 8, 2017), *aff'd*, 732 F. App'x 813 (11th Cir. 2018) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)).

Here, Plaintiff fails to allege the essential elements of a valid contract. There are no allegations of fact regarding any "offer" made to United for the air ambulance transportation of United's "insured." The Amended Complaint is entirely silent as to how or when Plaintiff informed United of Plaintiff's willingness to transport the insured from St. George, Grenada to a hospital in Tampa, Florida. There is no basis to infer from the allegations in the amended pleading that Plaintiff and Defendant had any communication whatsoever. Plaintiff merely

6

alleges in conclusory fashion that United "authorized" the air ambulance transport. *See* Amended Complaint at ¶16. The bare allegation of "authorization" does nothing to suggest the consensual element of mutual intent to contract.

The "authorization" exercise is a common and widely known feature of health insurance plans. *See e.g., City of Hope Nat. Med. Ctr. v. Seguros de Servicios de Salud de Puerto Rico, Inc.*, 983 F. Supp. 68, 76 (D.P.R. 1997), *aff'd sub nom. City of Hope Nat. Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223 (1st Cir. 1998) (discussing "the pre-authorization procedures mandated by the [health insurance contract]" while considering whether grounds existed to excuse compliance with the coverage requirement); *Munnelly v. Fordham Univ. Faculty*, 316 F. Supp. 3d 714, 739 (S.D.N.Y. 2018) (reviewing a health plan's pre-certification requirement for inpatient or out-patient mental health care while evaluating the merits of a dispute over mental health benefits for residential treatment services); *Simms v. Univ. Health All.*, 2010 WL 1712001, at *4 (D. Haw. Apr. 27, 2010) (reviewing health insurance policy's prior authorization and referral requirements for out-of-network surgical care while resolving a benefits dispute in favor of the defendant insurer). Standing alone, the mere fact that United allegedly "authorized" the air ambulance transportation says nothing about any agreement that was *independent* of the terms of the insured's health plan. That is especially true where, as here, the allegation at paragraph 16 is devoid of any details on how the "authorization" was accomplished or what the "authorization" entailed. There is no reason to assume (taking the allegation as true) that United participated in anything other than a plan-created protocol. Having failed to plead any facts sufficient to show an external agreement, Plaintiff has not stated a claim for any implied-in-fact contract with United.

A court in the Southern District of Florida recently dismissed with prejudice out-of-network medical providers' efforts to imply a contract with a health insurance company. *RMP Enterprises, LLC v. Connecticut Gen. Life Ins. Co.*, 2018 WL 6110998, at *1 (S.D. Fla. Nov. 21, 2018). According to the Amended Complaint, there were "pre-service communications during which Cigna allegedly verified eligibility and coverage for the services Plaintiffs provided." *Id.*, at *8. The medical providers alleged that through its "words and conduct" Cigna agreed to pay "usual and customary charges" for substance abuse treatment rendered to Cigna's insureds. *Id*. The providers also alleged that Cigna breached its purported "promise" when it "failed to reimburse Plaintiffs based on their usual and customary charges." *Id*. However, these allegations were insufficient to suggest the formation of an implied-in-fact contract. As the district court noted, "Plaintiffs fail[ed] to allege any 'conduct' that might give rise to an implied contract." *Id*. It was not enough for the medical providers to rest their claims on Cigna's alleged "verifications" of coverage. *Id*. Nor was it enough for the medical providers "to refer generally to Cigna's 'conducting during the verification process.'" *Id*. These conclusory allegations were inadequate because they did not "specify **what actions Cigna allegedly took** which might support a contract claim." *Id*., (emphasis added). In the absence of any alleged conduct, "there can be no implied-in-fact contract." *Id*.

Beyond the paucity of factual allegations in *RMP Enterprises,* the medical providers' claim for implied contract was also flawed because a verification of coverage does not constitute an agreement to pay. "Courts across the country agree that an insurer's verification of coverage is not a promise to pay a certain amount." *Id*. The court in *RMP Enterprises* cited

a series of decisions rejecting medical providers' efforts to equate a verification of coverage with a promise to pay a specific amount. *See e.g.*, *Vencor Hosps. S., Inc. v. Blue Cross & Blue Shield of R.I.*, 86 F. Supp. 2d 1155, 1165 (S.D. Fla. 2000) (noting that insurer's verification of coverage is merely a representation that the insured was "covered for the *type* of treatment" proposed by the medical provider, not promise to pay a certain amount for services), *aff'd*, 284 F.3d 1174 (11th Cir. 2002); *Peacock Med. Lab, LLC v. UnitedHealth Group, Inc.*, 2015 WL 5118122, at *5 (S.D. Fla. Sept. 1, 2015) ("[A]llegations here of an indefinite 'confirmation of coverage' are insufficient to allege the 'definite' promise ..."); *Cedars Sinai Medical Center v. Mid–West Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000) ("[W]ithin the medical insurance industry, an insurer's verification is not the same as a promise to pay"); *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*, 520 F. Supp. 2d 1184, 1194 (C.D. Cal. 2007) (coverage verification "cannot be construed as a binding contractual agreement"); *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, 2016 WL 7157522, at *4 (S.D. Tex. Dec. 7, 2016) ("[E]ven assuming that it was [the provider's] practice to make verification calls, the calls were actually made, and the insurance was verified, that verification was not the same as a promise of payment.").

The factual allegations in this case pale in comparison to the allegations that framed the amended pleading in *RMP Enterprises*. But even there the court found that no contractual agreement could be implied for payment of "usual and customary charges." Here, the out-of-network air ambulance carrier does not even allege that *it* contacted United - orally or in writing - about the services in question. Plaintiff stops short of describing (under the penalty of Rule 11) any direct contact whatsoever with United. All that Plaintiff alleges is that United

"authorized Plaintiff to transport INSURED." Amended Complaint at ¶16. This purported "authorization" could have simply been furnished to the "INSURED" in order to confirm the *type* of service, *i.e.*, air ambulance transportation, covered by the health plan.

Unlike the substance abuse treatment centers who at least alleged some dialogue with the insurer in *RMP Enterprises*, the air ambulance company gives no factual content about any course of dealing with United. For example, Plaintiff nowhere alleges that it transmitted anything to United before the date of transport (or even after) such as a proposed list of procedure codes or a price estimate. Plaintiff offers no information to illustrate any understanding between the two companies on a price, let alone the rendition of service to United's "INSURED." Absent any details about the parties' course of dealing, courts lack a foundation to justify the existence of implied-in-fact contracts. *Compare with Watershed Treatment Programs, Inc. v. United Healthcare Ins. Co*., 2007 WL 1099124, at *2 (S.D. Fla. Apr. 10, 2007) (finding that a medical provider pled enough facts to survive 12(b)(6) dismissal where the provider alleged it faxed an acknowledgment of the level of treatment to be provided, length of stay, and revenue code for payment, and this fax required the insurer to notify the provider if the terms of the agreement were incorrect);[1] and *Pelfrey v. Mahaffy*,

---

[1] The decision in *Watershed Treatment Programs, Inc*., was rendered in 2007 before *Twombly* and *Iqbal*, when pleading requirements were more liberal. Had it been decided after, the outcome may have been different. Regardless, the point remains that in *Watershed Treatment Programs, Inc.*, there were factual allegations about fax communications between the medical provider and the insurer. Those communications discussed the proposed course of care and the associated revenue codes. The medical provider's fax required the insurer to alert the provider of any inaccuracies. Additionally, the provider alleged that once the patient was admitted, it participated in a concurrent review with the insurer's care management representative. *Id*., 2007 WL 1099124, at *2. These alleged facts were deemed sufficient to state a claim for breach of implied contract under the "exceedingly low" pleading standard that existed at the time. *Id*., at *3.

2018 WL 3110794, at *3 (S.D. Fla. Feb. 2, 2018) (finding that employee alleged sufficient facts to indicate a meeting of the minds where employee described his verbal and written negotiations about employment and attached e-mail correspondence to his Complaint evidencing the offer with proposed salary and proposed profit sharing arrangement).

Based on the Amended Complaint in this case, there is no reason to assume that United had any knowledge about the service in question until after the transportation was accomplished when United received a formal post-service claim submission in ordinary course seeking payment of benefits under the insurance policy. *At most*, Plaintiff alleges (i) it rendered a service to "an insured beneficiary under a health care policy provided by Defendant," (ii) the service was needed due to inadequate care in St. George, Grenada, (iii) the service was somehow "authorized," (iv) the service was "covered" under the policy because United made a payment, but (v) the payment failed to meet Plaintiff's expectations because it was "only a fraction of the billed charges instead of a reasonable price." *See* Amended Complaint at ¶13, ¶15, ¶16, ¶18, and ¶24. These allegations are inadequate to justify the existence of a contract implied-in-fact. *Air Evac EMS Inc. v. USAble Mut. Ins. Co.*, 2018 WL 2422314, at *8 (E.D. Ark. May 29, 2018) (dismissing with prejudice out-of-network air ambulance carrier's amended pleading which included a claim for implied-in-fact contract because "the weight of the authority cuts against finding implied contracts between insurers and healthcare providers, even if the parties had a prior course of dealing.").

Finally, as the Florida Supreme Court explained in *Bromer v. Fla. Power & Light Co.*, 45 So. 2d 658, 660 (Fla. 1949), the law places a heavy burden on the party seeking to imply a contract because "[t]o hold otherwise would be to encourage loose dealings and

place a premium upon carelessness." *See also IDEARC Media LLC v. TSG Media, Inc.*, 2010 WL 11505563, at *3 (S.D. Fla. Sept. 30, 2010) ("But the movant maintains the heavy burden of proving the existence of a contract implied in fact.") (relying on *Bromer*). Plaintiff chose to forego the formality of an express contract with United when it transported Plaintiff's passenger from St George, Grenada to Tampa, Florida. "For those who do business without an express agreement, they proceed at their peril, and courts must craft terms for the implied-in-fact contract that *reasonable* people would have reached if they had thought to enter into a formal contract." *In re Sherwood Investments Overseas Ltd., Inc.*, 2015 WL 4486470, at *9 (Bankr. M.D. Fla. July 22, 2015), *aff'd*, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016) (emphasis in original).

## Conclusion

Plaintiff includes the same narrative that appeared in its initial pleading. The only new allegations indicate at paragraph 7 that Plaintiff embarked on a "voluntary undertaking." Plaintiff also adds allegations at paragraphs 20-21 that the parties "intended and assented" to a deal. These buzzwords about intent and assent do not suffice to state a claim. Plaintiff's statements do not support a plausible inference that any offer was presented to United or that United intended to be bound by it. Despite the guidance furnished by this Court, Plaintiff still failed to allege "sufficient facts to show that Plaintiff and United entered into a contract ***as demonstrated by their conduct***." ECF No. 8, at page 9 of 14 (emphasis added). As a result, Plaintiff cannot imply a contract of its own to supplant the written "health care policy" that Plaintiff recognizes as the root of any payment obligation owed by United to its insured.

WHEREFORE, Defendant UNITED HEALTHCARE INSURANCE COMPANY respectfully requests the entry of an Order dismissing Plaintiff's Amended Complaint *with prejudice*.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 14, 2019, the foregoing document was filed with the Clerk of the Court using CM/ECF. I further certify that I emailed the foregoing document to: Paul S. Kimsey, Esq., Kimsey Law Firm, P.A., 4012 Gunn Hwy., Suite 140, Tampa, Florida 33618, Telephone: 813-549-1001, Facsimile: 813.265.1752, Email: pkimsey@kimseylaw.com; *counsel for Plaintiff*.

                                              s / Daniel Alter_____
                                              DANIEL ALTER
                                              Florida Bar No. 0033510
                                              dan.alter@gray-robinson.com
                                              GRAY ROBINSON, P.A.
                                              401 East Las Olas Boulevard, Suite 1000
                                              Fort Lauderdale, Florida 33301
                                              Telephone: (954) 761-8111
                                              *Counsel for Defendant*